Case number 21-1187, Public Employees for Environmental Responsibility Petitioners v. Environmental Protection Agencies. Ms. Dinnerstine for the petitioner, Ms. Gaspel for the respondent. Ms. Dinnerstine, good morning. Good morning, your honors. My name is Paul Dinnerstine, and I represent Petitioner of Public Employees for Environmental Responsibility, or PEER for short. I first want to just tell you a little bit about PEER and why we have standing, and then I will get into the substance of the case, which we believe turns on the fact that the agency advanced impermissible erroneous interpretations of the governing statute, the Resource Conservation and Recovery Act, or RCRA. So, 11 years ago, PEER filed a petition with Dr. Kate Jenkins, who was then an EPA chemist in the RCRA program, asking to amend the corrosivity characteristic under RCRA to cover more wastes, particularly hazardous wastes with a pH between 11.5 and 12.5, and also to expand the characteristic to cover non-aqueous, meaning like solid or liquid waste. The petition sought to bring these wastes into RCRA's stringent, cradle-to-grave regulation of hazardous wastes in order to protect human health and the environment. Dr. Jenkins, our co-petitioner, was a leading person in bringing to public attention the fact that the first responders at the World Trade Center disaster were continuing to suffer from illnesses and injuries due to the hazardous conditions there. And that was part of the impetus for bringing this petition, that the injuries these people were suffering were in part due to the corrosive nature of the dust from the explosions, and yet because of the laxness of the corrosivity characteristic, those were not classified as hazardous wastes. So, here works on behalf of public employees in environmental fields in order to ensure that the nation's public laws concerning the environment and programs are implemented properly. In addition to people like Dr. Jenkins, who is one of our supporters, we also have people, the declarants that we use for standing, who are directly affected by what is considered a hazardous waste. Our declarants either work or live in close proximity to non-hazardous waste disposal sites that would not be able to accept some of the waste that they now accept if our petition were granted. So, turning to the merits, the denial of the petition here was not based on EPA's review of technical scientific matters or an exercise of policy discretion that was permissible that would normally have this court give deference to its decision. It was based on these erroneous interpretations of the statute. Ms. Dennerstein, it strikes me as even if we were to agree with you on some of these merits, you have a very steep challenge based on the standard of review. Standing? It's so broad as to make the process akin to non-reviewable. I mean, the agencies have discretion to decide how they want to spend their resources, and they just denied your request. And it's not that we're de novo considering whether we agree with you. We have to find that they've really abused their discretion. It's even beyond abusive discretion. It says, we may reverse the agency's choice only for compelling cause, such as plain error of law or a fundamental change in the factual premises previously considered by the agency. So, I would contend that the case you're citing and cases like that are actually distinguishable. Because in those cases, the petitioner was asking the agency to regulate in an area that maybe they hadn't regulated in before or to do something new. And what the court was saying was that the agency has the discretion as to how it's going to use its resources, what it's going to pick and choose to work on. This is not a case like that. There is a corrosivity characteristic. It exists. There's no discretion as to not. Do you have any precedent that supports what you're saying to distinguish the standard? Well, the precedence that we have will say that if EPA makes a decision like this, not to regulate a waste, and it's based on improper interpretation of the statute, there is no deference. There's no deference under Chevron because you're at Chevron step one. We're talking about in the context of a request for rulemaking. Yes. Do you have any precedent like that? Um. So, for instance, in the case of Hazardous Waste Treatment Council versus EPA, UC Circuit 2016, this was a challenge concerning a listing. And so what was the name of the case? Hazardous Waste Treatment Council versus EPA. Okay, I've got it. Yeah. Where are you saying? And there, the court said that the agency came up with all kinds of reasons that it shouldn't be listed, you know, basically policy reasons, adverse consequences. And what the court said is that regardless of whether these are true or not, it's the agency's obligation to comply with the dictates of Congress and ours to enforce them. Oh, I don't think this was a petition for rulemaking. What I read. Okay. So another example that is somewhat relevant is the Supreme Court case of Massachusetts versus EPA, where that was a petition to issue a regulation. And although the court recited, you know, that there's a very strict standard of review for a declination to grant a petition, that on the legal issue of whether or not there is authority, statutory authority to regulate in this area, the court did not grant deference. They did the usual. It's the court's responsibility and not the agency's or anyone else to read the statute and determine the law. I mean, wasn't that a situation where the Supreme Court said the agency mistakenly assumed that they could not regulate in that area? And so the answer they gave to the petition for rulemaking was improper. Right. Yes. That's not this case. I mean, yes, where an agency says we're not going to engage in rulemaking that you've requested because we don't have authority. Supreme Court said, well, we can look at that. And if you're wrong and if you really do have authority, we'll reverse it. And that standard review is not so rigid as to knock that case out. I didn't think that was this case. They're not saying they can't regulate. They're saying they already have them. They don't see any reason to change what they've done. So, I mean, it was a slightly different situation. But the point I'm trying to make is that on the legal issues, such as whether there's authority to regulate here, that's different legal issues. The court has the authority and the responsibility to interpret the statute and decide what the statute says. And just because it's a petition that, you know, under a circumstance where EPA say had lots of discretion as to whether they even wanted to regulate in this area, the court is not going to force EPA to choose to do something within its discretion. Right. And the Massachusetts case, you know, I also have a quote here from the case where they say, but once EPA has responded to a petition for rulemaking, its reasons for action or inaction must conform to the authorizing statute. And that's what we're saying here. Reasons for inaction do not conform to the authorizing statute. Could you address the timeliness of your claims? Yes. So the EPA argued that our complaint was not timely because we were challenged in certain things that were decided in 1980 when the original regulation was promulgated. We intend that that is not true. You know, what they say is that, for instance, when they promulgated the regulation, they decided that because of the definition of hazardous waste, which says that hazardous waste is one which may cause, which may present a hazard to health or the environment when improperly managed, that therefore they could take that word managed and run with it, so to speak, and say that they could consider any management considerations. And that even if a waste otherwise complied or fit within the definition of a hazardous waste, they could say, well, we're not going to call it hazardous waste because we're making a management consideration that this waste has a beneficial use and we're not going to regulate it. Now, EPA did not say that in 1980. What they said in 1980 was that, well, you know, we think that the standard, the 11.5 pH standard is unnecessarily conservative. The basis we have in the International Labor Organization encyclopedias is 11.5, but we're going to make it 12.5 because we think that's unnecessarily conservative. And the encyclopedia applied to eyes and not skin. When it came to the time to deny our petition, they abandoned that rationale. So the statutory rationale that they have in which we say is impermissible now wasn't made in 1980. In addition to that, even if you were to say that they did consider some of the same things in 1980 as now, we think this is a clear case of reopening. They considered this petition for 10 years.  They came up with statutory interpretations, some of which I'm going to go into in addition to the one about the definition of hazardous waste that were not in the 1980 decision. They considered many, many more studies. They came up with a new decision. Let me ask you about language in the 1980 decision that seems to suggest that they did consider management. It says, all advocated, including solids and the corrosivity characteristic, but none described situations where the improper disposal of such waste would be likely to cause damage. I'm sorry. Would be likely to cause damage. Improper disposal would be likely to cause damage. So aren't they relying on management of waste? They did rely on management of waste, but they didn't give a statutory basis for that like they did in 1980. So what we're challenging here is that they actually changed their rationale from 1980 until the petition denial in 2021. In 1980, they just said it was too strict, and they said the ILO encyclopedia only applied to eyes and not skin. They're not saying that anymore. They have omitted ILO encyclopedia, which is what they based the standard on. It says 11.5. Anything above 11.5 is going to cause damage to skin. But then they're bringing in a new way. So to make sure I understand you, are you saying that they did rely on the same rationale in 1980, they just didn't cite a statute, and then they're relying on the same study, the ILO, but they're emphasizing a different part of it? And to you, that's a change? No, what I'm saying is that they did not have the statutory interpretation that they have now back in 1980, which is what they say is time-barred. Their brief claims that their statutory interpretation of the definition of hazardous waste is what was decided in 1980, and therefore it's time-barred now. But that is not what they did in 1980. I understand your position. Thank you. Let me ask if there are any more questions, because you're over your time. We'll give you a couple minutes and reply. We'll give you a couple minutes and reply. Thank you. So the statutory misinterpretation is interesting. We'll give you a couple minutes and reply. I'm sorry. That's okay. Thank you. No problem. If you could please report, Sarah is serving in the United States. With me at Council's table is Susan Johnson from EPA's Office of General Counsel. The inquiry before the court is a narrow one, and Judge Pan, you honed in precisely on the points that I'd like to make, which is the inquiry before the court is whether EPA erred in denying peers' rulemaking petition. Under this court's precedent, EPA's denial is afforded significant deficits. Peer seeks a rulemaking to revise a corrosivity characteristic by lowering the upper threshold of what's classified as corrosive from a pH of 12.5 to 11.5, and by including non-eucleus waste. Peer bears the burden of proof in this instance, a burden that it has not carried. The corrosivity characteristic was issued as part of a 1980 rulemaking that established a broad-based program and framework for categorizing and managing all hazardous waste. That regulation was just one of many regulations issued during this rulemaking, and for over 40 years, it has functioned as intended to address the risks posed by hazardous corrosive waste to human health and the environment when such waste is improperly managed. In evaluating peers' rulemaking petition, EPA was focused on the relief that peer requested, a revision of the corrosivity regulation, and looked specifically at whether there was a gap in regulation that granting peers' petition could address. In other words, EPA looked at whether waste not regulated under the corrosivity standard for causing injuries that could be addressed were EPA to lower the upper pH level and include non-eucleus waste. It didn't consider non-corrosive injuries, nor did it consider injuries outside of the waste management context. This focus was consistent with EPA's longstanding practice, the objective and purpose of RCRA, and made practical sense. All right, Mrs. Hart, you need to not read because we have a rule against reading. Okay. Talk to us. Sorry about that. I'm going way too fast. Do you want to start all over again? We missed everything. No, I'm just kidding. So EPA carefully considered peers' petition and reviewed the study cited. EPA also looked at new information and damage incidents that had arisen since the 1980s. It considered the data and proposed a denial that addressed… Isn't this a reopening case? Not on the very initial determinations, certain initial determinations, as you conceded in your brief, but you gave new rationale for some things and you went into some things in great length. So aren't you beyond that state form standard review, which is very, very favorable if it's just, we'd like rulemaking. It looks like you reopened some matters in your own initiative. No, Your Honor, I would disagree that EPA reopened. There's four aspects that we claim are time-marred in peers' petition for review. And in those four aspects, EPA did not undertake any sort of substantive reconsideration, which is what's required for a reopener. So the first is EPA's statutory interpretation of the definition of hazardous waste under 42 U.S.C. 69035. EPA has, since the 1980 rulemaking, traditionally relegated the paragraph B for regulating most waste, including the characteristics of hazardous waste, such as corrosivity, but also the other characteristics like ignitability, reactivity, and toxicity. And that was clear in the 1980 rulemaking. If you look at JA4, which is the final denial, there's a footnote which quotes from the original rulemaking, and EPA lays out its statutory interpretation there. There was no reopener because EPA merely restated its statutory interpretation. I thought you gave some new rationale in some places. I would disagree that there was a new rationale. This isn't a case in which there's a gap in regulation. And what EPA did here was look at whether there was new information since 1980, since the 1980 rulemaking, to support a revision of the corrosivity regulation. It looked at—it undertook its own review, which it wasn't required to do, but it looked at the information that PEER supplied since 1980. And in support of lowering the pH, PEER relied primarily upon global guidance that EPA found was neither binding nor directly relevant. And in support of including non-aqueous waste, PEER relied primarily upon evidence of damage from the World Trade Center attacks, which, for a variety of reasons, EPA did not consider a plausible waste mismanagement scenario that RCRA was designed to address. I mean, it sounds like the answer you're giving to the Trade Center is we're not really sure, so it doesn't fit the normal mold, so we're not going to treat it. I mean, there's no definitive science on that, as I understand it. The dust from the World Trade Center? EPA is not saying, look, there's a definitive scientific answer on that. That's not what I understand. Yeah, I think that's correct, Your Honor. I think EPA was unable to draw a causal connection between corrosive properties in the dust and the injuries that were suffered. I think EPA would acknowledge that there were definitely adverse health effects. I mean, the World Trade Center cough is a very famous phenomenon, but that is not necessarily a corrosive injury. That's more of an irritant, respiratory type of injury, which is what the corrosivity characteristic was not designed to address. But going back, I want to go back to what the time-barred aspect and the re-opener arguments, because I just want to clarify that EPA does not contend that all aspects of the first petition is time-barred. EPA recognizes that here, under RCRA, has the ability to petition to revise the corrosivity characteristic. There's no question under the statute. But there is a statute of limitations in RCRA under 42 U.S.C. 6976A, and a time to challenge that original 1980 corrosivity regulation has passed. So to the extent that here seeks to revise the corrosivity regulation, EPA tailored its review to whether there was a justification based off of information that had arisen or information that was not available at the time of the 1980 rulemaking. And to the extent that EPA, or that, sorry. The statute says that any person can petition for promulgation amendment or repeal of any regulation. Yes, Your Honor. And the agency, and I can't remember how many statutory provisions are written that way, but in any event, yours is. It's broad. And you responsibly, over a decade, that's a little bit long, answered fully. And you gave a full answer to all of the related questions. Can we judge you on your answers? You're not suggesting we can't. If you say something in your response that makes no sense, it fails review that we are entitled to undertake, can we not come into that? EPA's final denial is undoubtedly judicially reviewable. EPA does not dispute that. But to the extent that EPA simply explained its statutory interpretation, did not reconsider it, did not change it, did not withdraw it in any way. And when you say that, do you mean to say to the extent that we simply repeated the words, even though we may have changed them a little bit, that we used in 1980? You can't judge us? Is that what you mean to say? Because I think you did more than that. I don't think that EPA did. EPA looked at the new incidents and said that this corrosivity characteristic is properly regulated under 42 UIC 6903, the subparagraph B, which allows EPA to consider the risks posed when improperly managed. And that interpretation and that corrosivity should be regulated under subparagraph B, that was set forth in the 1980 rulemaking. And EPA did not revisit that. This case is more like that ARC-V case that we cited. It's the American Road and Transportation Association case where the court found that re-opener did not occur if the agency was simply restating its statutory interpretation and applying it. Well, that's the question. I mean, it's close, because there's some places I think the agency's trying to be responsible. You're stating a lot, and it looks like more than just restating. Right. And I think the ARC-V case recognized the difficult position that the agency is put in. Because if it does a really comprehensive job and thoroughly responds to the comments, which is what it did here, it's subject to a challenge of re-opener. And if it doesn't do a good job, then it's subject to challenge under the EPA for treatment of the petition for rulemaking. I mean, I don't think that the fact that EPA did a good job and responded to all the comments is evidence of re-opener. It's simply evidence that EPA complied with its obligations to respond to the rulemaking petition. I see that I'm out of time, so I just wanted to underscore that EPA has a significant amount of discretion here when it comes to the technical determinations it made and its review of the scientific data. It also has a lot of deference when it comes to deciding whether rulemaking is appropriate. This isn't a situation where there's a gap. This is a situation where the regulation has functioned as intended. So unless the court has further questions, I would urge you to deny the petition for review seeking a rulemaking petition. Thank you. This is large. Okay, why don't you take two minutes? So, first of all, I just wanted to make clear, in case I hadn't before, that the statutory interpretation of the 6903A and B that EPA made in 1980 was not the same as what they made in 2021. In 1980, they said A applies to substances that are hazardous no matter how they're handled. B applies to substances that can be hazardous if they're improperly managed. And they even said in the rulemaking that B covers far more substances than A. It's much broader. When you come to 2021, they're using B to contract the area of regulation of hazardous substances, saying because the word management was used in the statute, we can consider any waste management considerations we want, including ones outside of the statute, like our desire to allow hazardous waste, certain waste, such as the waste from waste treatment plants, to be allowed. And therefore, we're going to send it on that basis. Ms. Dinnerstein, looking at the 1980 rule, it does say, and I can see this is under listing, it does say here that it is EPA's conviction that most wastes are hazardous only because they pose a substantial present or potential hazard to human health or the environment when improperly managed, and thus meet Part B of the statutory definition of hazardous waste. Yes, that's correct. And we actually agree with the interpretation they gave in 1980. That's the correct interpretation. In 2021, they added to the hazardous waste definition, but we can exclude things because we think some of these wastes are managed beneficially. That's not the same interpretation. They gave a new interpretation in 2021. But it does say, if I may, I'm sorry, it says EPA nevertheless recognizes that there are wastes which are so acutely hazardous that they can be considered to present a substantial hazard, whether improperly managed or not. So are they, I guess I'm not understanding what the difference is between what you think they said in 1980 and now, because it seems they were always focused on management. They said there are some wastes that come under A that are hazardous no matter how they're managed. Then there are some wastes that come under B, which is much broader, that become hazardous if they're improperly managed. So that's the correct interpretation of the statute. I'm sorry, so what's different now? But what's different now is that in 2021, they rely on B, which has to do with improper management, to say that because it is about improper management, we can consider what we call management considerations, which is not even about improper management. It's about, we think that some of these wastes are beneficial and shouldn't be regulated as hazardous, and therefore we're going to set the characteristic to exclude them. I see what you're saying. They relied on that in 1980 with respect to the lime sludge. No, they did not. In 1980, what they said is we want to exclude lime sludge, but they didn't say it was because of their interpretation of A and B. They did not rely on that part of the statute or any statutory interpretation to do that. They just said we think it would be too strict, and we want to exclude this waste. Yeah, but on what authority were they doing it in 1980? They didn't really have a good authority. That's part of the problem. You just said you agreed with their interpretation. I agree with their interpretation of the statute, which wasn't even in the part of the regulation that had to do with the corrosivity standard. It was in another part of it. They interpreted that part of the statute, and we believe they interpreted it correctly. It had nothing to do with the corrosivity characteristic in the 1980 ruling. In 2021, they come back and say we did this in 1980. They actually didn't. They came up with a new interpretation of immediate hazardous waste that allowed them to deny the petition because they wanted to exclude certain waste from regulation. So I see that my time is out. I did just want to talk about the other statutory misinterpretations. If my colleagues don't have any questions, we'll get that from you. Okay. So if there are no further questions, then thank you for your time. I appreciate it. Thank you. And just in conclusion, we contend that the petition in denial needs to be vacated because it is based on impermissible statutory interpretation. Thank you.
judges: Henderson, Pan, Edwards